# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**Lee H. Pulsifer and Laura L. Pulsifer,**

       Debtors.                **Bankruptcy Case No. 12-36562-svk**

**LEE H. PULSIFER and LAURA L. PULSIFER,**

       Plaintiffs,            **Adv. Proc. No. 13-02176-svk**

   -vs-                    **Case Nos. 13-C-648, 13-C-835**

**U.S. BANK, NATIONAL ASSOCIATION,**
**as Trustee for Citigroup Mortgage Pass-Through**
**Certificates Series 2007-AR4, and WELLS FARGO**
**HOME MORTGAGE,**

       Defendants.

**MARY B. GROSSMAN, Standing Chapter 13 Trustee,**

       Additional Party.

## DECISION AND ORDER

The Court withdrew the reference from the bankruptcy court and then consolidated these two cases, which relate to Lee and Laura Pulsifer's attempts to obtain a loan modification pursuant to the Home Affordable Modification Program ("HAMP"). The defendants, U.S. Bank, N.A., as Trustee for Citigroup Mortgage Pass-Through Certificates Series 2007-AR4, and Wells Fargo Home Mortgage, move

to dismiss the Pulisfers' complaint, which alleges claims for promissory estoppel, negligent misrepresentation, and breach of the covenant of good faith and fair dealing, in addition to asserting that U.S. Bank lacks standing to pursue claims in the Pulsifers' bankruptcy proceeding. The Pulsifers also move for leave to file a second amended complaint.

To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Obviously, leave to amend should be denied if the proposed amendment fails to state a claim. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted").

In 2005, the Pulsifers refinanced their home with a $470,250.00 construction bridge loan. Thereafter, the Pulsifers began to experience financial difficulties. In 2007, Lee Pulsifer was unemployed or underemployed. In 2008, he took a job making less money than his previous full time employment. Accordingly, the Pulsifers discussed the possibility of loan modification with their loan servicer, Wells Fargo Home Mortgage.

In 2008 and 2009, the Pulsifers contacted Wells Fargo several times regarding their request for loan modification. In October 2009, Wells Fargo provided the

- 2 -

Case 2:13-cv-00648-RTR    Filed 01/08/14    Page 2 of 10    Document 10

Pulsifers with information regarding the Home Affordable Modification Program., along with a Trial Period Plan (TPP or the Plan), which called for the Debtors to make three payments in the amount of $2,108 in the months of November 2009, December 2009, and January 2010.  Amended Complaint, Exhibit 1.  The Plan states that it is "Step One of Two-Step Documentation Process."  The Plan further states that it "will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature."  The Plan also states that it "is not a modification of the Loan Documents" and that the "Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed."  In signing the Plan, the Pulsifers acknowledged that "all terms and provisions of the Loan Documents remain in full force and effect," and that Lender and the Pulsifers "will be bound by, and will comply with, all of the terms and provisions of the Loan Documents."

      The Pulsifers made three payments of $2,108 pursuant to the Plan, and they continued to make payments of $2,108 thereafter until November 2010.  During the calendar year 2010, the Pulsifers continuously contacted Wells Fargo, asking when the process would be completed.  Wells Fargo responded that it was processing their request, but ultimately "failed and refused to provide" the Pulsifers "with a written HAMP modification and also failed and refused to provide them with any declination of the loan modification."  Amended Complaint, ¶ 21.

In February 2011, U.S. Bank, the assignee of the Pulsifers' mortgage, filed a foreclosure action against the Pulsifers in Wisconsin state court. *U.S. Bank, N.A. v. Pulsifer, et al.*, Waukesha County Case No. 11-CV-461. The Pulsifers filed for bankruptcy protection under chapter 13 on November 20, 2012, just one day prior to the hearing on U.S. Bank's motion for summary judgment. At that point, the Pulsifers were nearly three years and over $130,000 behind on their mortgage payments. However, the Pulsifers proposed to pay no arrearage to U.S. Bank through their chapter 13 plan. U.S. Bank objected to confirmation of the Pulsifers' plan and filed a proof of claim in the amount of $621,696.40. On March 4, 2013, the Pulsifers objected to U.S. Bank's claim on the alternate grounds that U.S. Bank lacks standing to file a claim and that U.S. Bank should be estopped from claiming an arrearage due to its delay in processing their modification application. On the same day, the Pulsifers commenced this adversary proceeding against U.S. Bank and Wells Fargo.

Therein, the Pulsifers allege that Wells Fargo breached the duty of good faith and fair dealing by representing to the Pulsifers that they could qualify for a loan modification under HAMP, then failing and/or refusing to process the Pulsifers' modification. The Pulsifers rely on *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), which held that HAMP and its enabling statute do not preempt "otherwise viable state-law claims." Obviously, this holding does not help the Pulsifers if their claims are not "otherwise viable." *Id.* at 555.

In *Wigod*, the Seventh Circuit considered whether a TPP under HAMP was an

- 4 -

offer which, if accepted, could form the basis for an enforceable contract under Illinois law. It could, but only if the loan servicer actually executed the TPP. The court explained:

> Wigod signed two copies of the Plan on May 29, 2009, and returned them along with additional financial documentation to Wells Fargo.
>
> Under the terms of the TPP Agreement, then, that moment was Wells Fargo's opportunity to determine whether Wigod qualified. If she did not, it could have and should have denied her a modification on that basis. *Instead, Wells Fargo countersigned on June 4, 2009 and mailed a copy to Wigod with a letter congratulating her on her approval for a trial modification.* In so doing, Wells Fargo communicated to Wigod that she qualified for HAMP and would receive a permanent "Loan Modification Agreement" after the trial period, provided she was "in compliance with this Loan Trial Period and [her] representations . . . continue[d] to be true in all material respects."

673 F. 3d at 562 (emphasis added). Unlike in *Wigod*, Wells Fargo did not execute the Pulsifers' TPP. Amended Complaint, ¶ 19 (Wells Fargo "never sent the debtors a copy of the [Plan] with a signature of [Wells Fargo]"). Thus, there was no "unilateral offer to modify" the Pulsifers' loan "conditioned on [their] compliance with the stated terms of the bargain." *Wigod* at 562. Other courts have recognized this distinction. *See, e.g., McGann v. PNC Bank, N.A.*, No. 11-cv-06894, 2013 WL 1337204, at *6 (N.D. Ill. March 29, 2013) ("Unlike *Wigod*, PNC never executed and returned the TPP Agreement to McGann and instead it requested additional documentation from McGann. Pursuant to the TPP Agreement's own terms, PNC's failure to sign the agreement evidences that it had no obligation to offer McGann a HAMP loan modification") (collecting cases). Without a valid offer, there can be no underlying

contract, and without an underlying contract, the Pulsifers' claim for breach of the duty of good faith and fair dealing necessarily fails. *See Tabatabai v. West Coast Life Ins. Co.*, 664 F.3d 663, 668 (7th Cir. 2011) ("Established Wisconsin law states, 'If there is no contract, the implied duty of good faith and fair dealing does not come into play'").

However, the absence of a contract does not impact the Pulsifers' claim for promissory estoppel. Such a claim consists of three elements: (1) a promise that the promisor reasonably should expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcing the promise. *Hoffman v. Red Owl Stores, Inc.*, 133 N.W. 2d 267, 275 (Wis. 1965). The Pulsifers allege that Wells Fargo represented that it "would approve the Loan Modification based upon the Debtors' compliance with the [TPP]." Proposed Second Amended Complaint,[1] ¶ 23. *See Wigod* at 566 ("Wigod asserts that Wells Fargo made an unambiguous promise that if she made timely payments and accurate representations during the trial period, she would receive an offer for a permanent loan modification . . .") More generally, the Pulsifers allege that Wells Fargo "negligently or intentionally failed to process their application for a loan modification . . ." Second Amended

---

[1] The defendants argue that the Pulsifers should not be allowed to file a second amended complaint because of undue delay, but at least some of this delay can be attributed to the procedural issues that arose when the defendants moved to withdraw the reference from the bankruptcy court. Moreover, the first amended complaint was filed as a matter of course shortly after the adversary proceeding was initiated. Fed. R. Civ. P. 15(a)(1). The Court finds no further justification to deny leave to amend. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile").

Complaint, ¶ 38.  *See Fletcher v. OneWest Bank, FSB*, 798 F. Supp. 2d 925, 932-33 (N.D. Ill. 2001) (plaintiff stated an actionable promissory estoppel claim by asserting "reliance on OneWest's promise to consider her application and give her a response").  Finally, the Pulsifers allege that they "did not undertake any other potential loss mitigation options or seek or attempt to file a Chapter 13 bankruptcy in 2009 based upon the representations of [Wells Fargo] for the potential to apply for and obtain a loan modification under HAMP."  Second Amended Complaint, ¶ 19.  The defendants argue that it is implausible to suggest that the Pulsifers would have taken immediate steps in 2009 to initiate a short sale or cure the arrearage when they waited so long to take any action after learning that they would not be able to obtain a permanent loan modification.  Unlikely, perhaps, but not implausible.  At this stage, the Court must draw all reasonable inferences in favor of the Pulsifers.  *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1115 (7th Cir. 2013).  They have stated an actionable claim.  *See, e.g., McGann* at *7 (plaintiff "continued to make those payments in lieu of other options, such as bankruptcy, refinancing her home, or a short sale, because she believed that doing so would make her eligible for a loan modification").

      The Pulsifers' negligent misrepresentation claim survives for similar reasons.  Defendants cite an unpublished Fifth Circuit case which dismissed a negligent misrepresentation claim because the plaintiffs could not establish that they were injured as a result of the alleged misrepresentation.  *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, 556 (5th Cir. 2012); *compare Hatleberg v. Norwest Bank*

- 7 -

*Wis.*, 700 N.W.2d 15, 26 (Wis. 2005) and *Malzewski v. Rapkin*, 723 N.W.2d 156, 163 (Wis. Ct. App. 2006) (listing elements of negligent misrepresentation claim under Wisconsin law). But unlike in *Pennington*, the Pulsifers plausibly allege that they were injured by relying on the defendants' misrepresentations.

Finally, the Court agrees with the defendants that this is not the proper forum to adjudicate the Pulsifers' claims with respect to U.S. Bank's alleged lack of standing or interest in the underlying Chapter 13 proceedings. Standing is typically a threshold issue, but the focal point of the Pulisfers' adversary complaint is Wells Fargo's alleged actions or inactions as the loan servicer. Despite the assignment to U.S. Bank, the parties appear to agree that Wells Fargo was the loan servicer at all relevant times. Second Amended Complaint, ¶ 7. Once the Pulsifers' claims are resolved, the bankruptcy court can make a ruling on U.S. Bank's standing, if necessary.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. The defendants' motion to dismiss [Docket Number 8 in Bankruptcy Case Number 13-2176] is **GRANTED-IN-PART** and **DENIED-IN-PART**;

2. The Pulsifers' motion for leave to file a second amended complaint [ECF No. 6] is **GRANTED**. Said complaint should be filed by the Pulsifers within five (5) days of the date of this Order;

3. Pursuant to Federal Rule of Civil Procedure 16(b), a telephonic scheduling conference is scheduled for **March 11, 2014** at **10:30 a.m.** (Central Time).

Please be available at that time. The Court will initiate the call.

4. The purpose of the conference call is to establish a scheduling order which will limit the time: (a) to join other parties and to amend the pleadings; (b) to file motions; (c) to complete discovery;

5. The scheduling order may also: (a) modify the timing for disclosure under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted; (b) provide for the disclosure or discovery of electronically stored information; (c) include any agreements the parties reach for asserting claims of privilege or protection as trial preparation material after information is produced; (d) the date or dates for conferences before trial, a final pretrial conference, and trial; and (e) any other matters appropriate in the circumstances of the case;

6. The time limitations set forth in the scheduling order may only be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4);

7. The parties should be prepared to discuss the matters listed in Civil Local Rule 16(a)(1). Please refer to Attachment A. Special attention should also be given to Rule 26(f)(1), which requires the parties to conduct a settlement/discovery conference at least twenty-one (21) days prior to the initial scheduling conference described above. The Rule 26(f) conference may be conducted by telephone. Rules 26(f)(2) and (3) mandate that the parties, within fourteen (14) days of their conference: (a) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (b) make the required initial disclosures under Rule

26(a) regarding witnesses and documents.  In addition to the matters specified in Rules 26(f)(2) and (3), the Court requests that the proposed discovery plan submitted by the parties include one or two sentences stating the nature of the case;

    8.    The written report must include the telephone numbers where the parties can be reached for this call;

    9.    In addition, Judge Randa is participating in the Seventh Circuit Electronic Discovery Pilot Program and has adopted the <u>Principles Relating to the Discovery of Electronically Stored Information</u>.  Counsel should be fully prepared to discuss methods and techniques to accomplish cooperative fact-finding in their case at the initial status conference.  Before the initial status conference, counsel must also meet and discuss the Principles Relating to the Discovery of Electronically Stored Information.  At the initial status conference, counsel must be prepared to discuss what agreements they have reached regarding discovery of Electronically Stored Information ("ESI") and what area of disagreement they have with regard to discovery of ESI.  After discussing the matter with counsel, the Court will determine whether to enter the <u>Standing Order Relating to the Discovery of Electronically Stored Information</u> in their particular case.  (Please refer to Attachments B & C).

    Dated at Milwaukee, Wisconsin, this 8th day of January, 2014.

    **BY THE COURT:**

    */s/ Rudolph T. Randa*
    **HON. RUDOLPH T. RANDA**
    **U.S. District Judge**

- 10 -

Case 2:13-cv-00648-RTR   Filed 01/08/14   Page 10 of 10   Document 10